UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM R. CUNNINGHAM and CUNNINGHAM ELECTRONICS CORPORATION,<br><br>    Plaintiffs/Counterdefendants,<br><br>  v.<br><br>POSNET SERVICES, LLC,<br><br>    Defendant/Counterplaintiff,<br><br>  and<br><br>MARK SMITH,<br><br>    Defendant. | Case No. 05-cv-4191-JPG |
| POSNET SERVICES, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM R. CUNNINGHAM and CUNNINGHAM ELECTRONICS CORPORATION,<br><br>    Defendants. | Consolidated with<br>Case No. 06-cv-4033-JPG |

**MEMORANDUM AND ORDER**

      This matter comes before the Court on defendant/counterplaintiff POSnet Services, LLC's ("POSnet") motion for partial summary judgment (Doc. 81). Plaintiffs/counterdefendants William R. Cunningham ("Cunningham") and Cunningham Electronics Corporation ("CEC") have responded to the motion (Doc. 92). The Court also considers POSnet's motion to strike portions of Cunningham and CEC's response as well as an exhibit to that response (Doc. 96). Cunningham and CEC have responded to that motion (Doc. 97), and POSnet has replied to that

response (Doc. 103).

**I.        Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

As a preliminary matter, POSnet objects to the Court's consideration of portions of Cunningham's affidavit submitted in support of his and CEC's response to POSnet's summary judgment motion. It argues that the statements in the affidavit are without foundation or are conclusory. In ruling on a motion for summary judgment, the Court considers only evidence that would be admissible at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). To the extent Cunningham's affidavit statements would be inadmissible if he offered them at trial, the Court will not consider them or the portions of the brief they purport to support. Because the Court is well able to sift through the evidence and to consider each piece under the applicable federal rules, there is no need to strike any part of Cunningham's affidavit or the brief it supports. The Court will therefore deny POSnet's motion to strike (Doc. 96).

That having been said, viewing all the admissible evidence and drawing all reasonable inferences in favor of Cunningham and CEC, the Court finds the following facts for the purposes of this motion.[1]

On December 23, 2002, CEC, Cunningham and POSnet entered into a joint venture memorialized by the Joint Venture Agreement ("JVA"). The joint venture was established with the purpose of facilitating retail merchants' clearing of paper coupons and electronic discount offers redeemed at their establishments by their customers. CEC was becoming involved in the business of clearing paper coupons and POSnet was becoming involved in the business of clearing electronic discount offers. The joint venture aimed to jointly develop and operate a

---

[1]Today the Court also enters an order ruling on Cunningham and CEC's motion for summary judgment on POSnet's counterclaims. Although the facts set forth in that order are viewed in POSnet's favor, unlike the facts in this order, that order gives the reader an idea of the general nature of the disputes involved in this litigation.

hardware and software system ("the System") that would allow retail merchants to process both paper coupons and electronic discount offers at terminals located in their stores and receive payment for those coupons the following day. In November 2004, the parties amended the JVA ("AJVA").

The JVA/AJVA contained the following relevant provisions:

> 3. <u>Loan.</u> Cunningham shall loan PSL [POSnet] up to a maximum of $6,000,000.00, for the purpose of developing, marketing and operating The System. $750,000.00 of the loan has been advanced prior to the signing of this Agreement. The loan shall be made in increments of $250,000.00 upon the written request of PSL. CEC commits to loaning to PSL the undrawn balance of the foregoing $6,000,000 loan in increments of $250,000 upon the written request of PSL.
>
> 4. <u>Interest and Principal Payments.</u> PLS shall make . . . for any month for which PSL has a net profit, make [*sic*] monthly principal payments to CEC of 10% of such net profit on the next payment date, until repayment of the loan is made in full. . . .
>
> * * *
>
> 9. <u>Covenants of PSL to CEC During Pendency of Loan.</u> During the time that there is a Loan balance PSL shall:
>
>> * * *
>>
>> (c) <u>Dividends and Redemption.</u> (i) Not declare or pay any dividend, including stock dividends, on or make any distribution to the holders of ownership interests in PSL . . . , or (ii) make any payment on account of the purchase, redemption or other retirement of ownership interests in PSL unless, in each case, the then remaining unpaid balance of the Loan, along with any accrued interest, is paid in full.

*See* JVA ¶¶ 3, 4 & 9; AJVA ¶ 1.

Cunningham performed his obligation under the JVA to loan POSnet $6 million. POSnet has never made a profit and has not repaid any part of the principal.

While the loan was outstanding, POSnet never paid a dividend or made a distribution to

Proficio Partners, Inc. ("Proficio"), POSnet's sole member. However, at some point during the life of the JVA/AJVA, Proficio sold POSnet to Priva Technologies, Inc. ("Priva"). As a part of the transaction, POSnet's managers Tim Halfman, Brian Rock and Mark Smith traded their Proficio stock for shares of Priva stock. Priva advanced POSnet money to pay its legal fees incurred during the transaction, which POSnet is obligated to repay.

On September 23, 2005, Cunningham and CEC filed this lawsuit against POSnet in the Circuit Court of Union County, Illinois. POSnet removed the case to federal court on October 11, 2005, on the basis of original diversity jurisdiction. *See* 28 U.S.C. § 1332(a). In November 2006 they amended the Complaint to add Mark Smith ("Smith"), one of POSnet's managers, as a defendant. The First Amended Complaint alleges causes of action for a declaration that Cunningham and CEC are entitled to certain rights under the AJVA (Count I), for breach of the JVA and AJVA (Count II), for fraudulent misrepresentation (Count III) and for fraudulent concealment (Count IV).

On December 20, 2006, POSnet answered and brought counterclaims against Cunningham and CEC for breach of the JVA and the AJVA (Counterclaim Count I), for violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (Counterclaim Count II), for fraudulent misrepresentation (Counterclaim Count III) and, in the alternative, for a declaration that the JVA and AJVA are terminated and unenforceable (Counterclaim Count IV).

POSnet filed the pending motion for summary judgment seeking judgment on a portion of Count II of Cunningham and CEC's First Amended Complaint. Specifically, it seeks judgment on the plaintiffs' claim that it breached the JVA by "not [paying] the principal amount of the loan despite making a payment on account of the purchase of PSL and it making a distribution to the owners of PSL." Am. Compl. ¶ 24(a). In essence, the plaintiffs claim that

POSnet breached ¶ 9(c) of the JVA. POSnet argues that it never made a profit and never made a prohibited distribution or payment, so it cannot be found in breach of the loan repayment provisions of the JVA.

Cunningham and CEC's response does not squarely address POSnet's motion and, in fact, seeks to expand the scope of POSnet's motion beyond its true bounds. POSnet's motion is extremely narrow, focusing solely on the alleged breach of ¶¶ 4 and 9(c) of the JVA. In contrast, Cunningham and CEC argue that they are entitled to full repayment of the $6 million loan because POSnet committed fraud, because they are entitled to restitution and because POSnet materially breached numerous other provisions of the JVA/AJVA. While these arguments may justify the relief Cunningham and CEC seeks – repayment of the $6 million loan – under some other theory of liability, they are irrelevant to whether POSnet breached ¶¶ 4 and 9(c) of the JVA.

### III.  Analysis

POSnet is entitled to summary judgment on the limited issues presented in this motion because no reasonable jury could find that POSnet breached the relevant portions of the JVA. In order to establish a cause of action for breach of a contract under Illinois law, which all parties agree applies in this case, a plaintiff must prove (1) that a valid and enforceable contract existed, (2) that the plaintiff substantially performed its obligations under the contract, (3) that the other party breached the contract, and (4) that the plaintiff was damaged as a result of the breach. *See Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 826 N.E.2d 430, 439 (Ill. App. Ct. 2005); *Action Constr. & Restoration, Inc. v. West Bend Mut. Ins. Co.*, 748 N.E.2d 824, 826 (Ill. App. Ct. 2001).

Since there is no real dispute that POSnet never made a profit and is not required to repay Cunningham under ¶ 4 of the JVA, all that is at issue in this motion is ¶ 9(c) of the JVA, in

which POSnet promised to

> (i) Not declare or pay any dividend, including stock dividends, on or make any distribution to the holders of ownership interests in PSL . . . , or (ii) make any payment on account of the purchase, redemption or other retirement of ownership interests in PSL unless, in each case, the then remaining unpaid balance of the Loan, along with any accrued interest, is paid in full.

Cunningham and CEC argue that Halfman's, Rock's and Smith's stock swaps were forbidden by ¶ 9(c). They believe that giving Priva shares to Halfman, Rock and Smith constituted a "dividend," "distribution" or "payment on account of the purchase . . . of ownership interest in PSL." Cunningham and CEC also argue that Priva's advancing POSnet money for the legal fees incurred in the transaction was forbidden by this provision.

Under Illinois law, which all parties agree applies in this case, when construing a contract the Court must give effect to the intent of the parties. *Schek v. Chicago Transit Auth.*, 247 N.E.2d 886, 888 (Ill. 1969). The Court must first attempt to determine this intent solely from the contract language. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citing *Western Ill. Oil Co. v. Thompson*, 186 N.E.2d 285, 287 (Ill. 1962)); *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984). It is the Court's duty to construe and enforce the contract as it was written. *Shaffer v. Liberty Life Assur. Co. of Boston*, 746 N.E.2d 285, 288 (Ill. App. Ct. 2001). If the language is unambiguous, the Court must interpret the contract as a matter of law without reference to extrinsic, or parol, evidence. *Air Safety*, 706 N.E.2d at 884. On the other hand, if the language is susceptible to more than one meaning, then the contract is ambiguous and parol evidence may be used to determine the parties' intent. *Air Safety*, 706 N.E.2d at 884. In this case, the language of ¶ 9(c) is unambiguous, so the Court will not consider any extrinsic evidence and will confine its consideration to the plain language of that provision.

No reasonable jury could find that POSnet violated ¶ 9(c)(i) of the JVA. POSnet did not

declare or pay a dividend or make any distribution to anyone with an ownership interest in POSnet – Proficio, Halfman, Rock, Smith, and Proficio's other shareholders. POSnet's paying a dividend or making a distribution to its owners means transferring its own assets to those owners. One of the purposes of this prohibition was to prevent POSnet's owners from raiding its assets and leaving no viable company to repay Cunningham's loan or to perform the JVA. In the Priva/Proficio stock swap, there is no evidence to show that POSnet transferred any of its assets to any entity that had an ownership interest in it before the transaction. To the extent that the plaintiffs believe the Priva stock received by Halfman, Rock and Smith constituted a distribution, that transfer was made *by Priva*, not by POSnet or Proficio. The JVA was not binding on Priva when that transaction was made.

Similarly, no reasonable jury could find that POSnet violated ¶ 9(c)(ii). POSnet did not pay anyone "on account of" the purchase of an ownership interest in POSnet. This provision was intended in part to prevent POSnet from purchasing its own ownership interests and leaving the company underfunded and unable to repay the loan or perform the JVA. In the Priva/Proficio transaction POSnet did not acquire any such ownership interest. And again, to the extent that the transfer of Priva stock to Halfman, Rock and Smith may have constituted a "payment on account of the purchase . . . of ownership interests in PLS," that payment was made by Priva, not POSnet or Proficio.

The Court is puzzled as to how Priva's advancing POSnet money to cover its legal fees could fall under either ¶ 9(c)(i) or (ii). Because Cunningham and CEC have not adequately explained this theory, the Court rejects it.

Because no reasonable jury could find that POSnet was required to repay the loan under ¶ 4 of the JVA or that POSnet violated ¶ 9(c) of the JVA, POSnet is entitled to summary judgment

on the portion of Count II alleged in ¶ 24(a).

**IV.     Conclusion**

For the foregoing reasons, the Court **DENIES** POSnet's motion to strike (Doc. 96), **GRANTS** POSnet's motion for summary judgment on the portion of Count II that alleges a breach of ¶ 9(c) of the JVA (Doc. 81) and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: June 28, 2007**

                 s/ J. Phil Gilbert
                 **J. PHIL GILBERT**
                 **DISTRICT JUDGE**