IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM R. CUNNINGHAM, and ) <br> CUNNINGHAM ELECTRONICS ) <br> CORPORATION, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> POSNET SERVICES, LLC, and ) <br> MARK SMITH ) <br> ) <br>     Defendants. ) | Case No.: 3:05 cv-4191-JPG-DGW |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion to Reinstate Case (Doc. 116) filed by Plaintiff Cunningham Electronics, the Motion to Enforce Settlement filed by Defendant Mark Smith (Doc. 120), the Supplemental Motion to Enforce Settlement filed by Defendant Mark Smith (Doc. 123), and the Motion Joining in Posnet's Motion to Strike Parts of the Bigler Affidavit and Reference Thereto filed by Defendant Mark Smith (Doc. 125).[1]  It is **RECOMMENDED** that the Plaintiffs' Motion to Reinstate the Case (Doc.116) be **DENIED**, that Defendant Mark Smith's Motion to Enforce the Settlement Agreement (Doc. 120) and Supplemental Motion to Enforce the Settlement Agreement (Doc. 123) by Defendant Mark Smith be construed as one motion and be **GRANTED**, that Defendant Posnet's Motion to Strike Parts of the Bigler Affidavit and References Thereto (Doc. 124) be

---

[1] The Motion to Strike Parts of the Bigler Affidavit and References Thereto filed by Defendant Posnet (Doc. 124) was filed as a response to (Doc. 123) and not as a motion as contemplated by Doc.125.

**DENIED** and that Defendant Mark Smith's Motion Joining in Posnet's Motion to Strike Parts of the Bigler Affidavit and Reference Thereto (Doc. 125) be **DENIED AS MOOT**, and that an **ORDER** enforcing the settlement agreement be issued and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

#### PROCEDURAL HISTORY

This case has a long and tortured history before the Court.[2] The dispute in this matter has been litigated fiercely and it comes as no surprise that the parties disagree about the settlement agreement reached in the East St. Louis Courthouse on August 7, 2007. As the parties point out in their briefs, the August 7 conference was the second settlement conference held in this case, and it lasted past the close of the business day, after the General Services Administration had shut off the air conditioning to the premises.[3] The first settlement conference was conducted by the Court on December 21, 2006; it also lasted several hours and ended unsuccessfully. At the second conference on August 7, the parties reached an agreement which was memorialized and signed by the parties or their representatives and Magistrate Judge Wilkerson (Doc. 120, Exh. 1). Judge Wilkerson then informed Judge Gilbert that the case had settled (Doc. 114).

On August 13, 2007, Judge Gilbert issued an order retaining jurisdiction for 60 days

---

[2] The Court will not produce a long factual summary of the dispute as this has been covered in other Orders. (See the Court's Memorandum and Order on the second motion for summary judgment filed by Plaintiff William R. Cunningham and Cunningham Electronics Corp. (Doc. 110) for a factual discussion of the dispute.)

[3] GSA routinely shuts off the air conditioning for the East St. Louis Courthouse in the summer five minutes after the close of business which is scheduled for 4:30 pm. It should be noted that the premises heat up rapidly to an uncomfortable environment.

(Doc. 115). On September 27, 2007, Plaintiffs filed a Motion to Reinstate the Case (Doc. 116).[4] Defendant Posnet Services responded on September 28, 2007 (Doc. 118). On October 1, 2007, Defendant Mark Smith filed a Motion to Enforce Settlement (Doc. 120). On October 9, 2007, Plaintiffs Cunningham and Cunningham Electronics filed a Memorandum in Support of its Motion to Reinstate the Case (Doc. 121). On October 9, 2007, Defendant Mark Smith filed a Supplemental Motion to Enforce Settlement (Doc. 123). On October 12, 2007, Defendant Posnet Services filed Posnet's Response to Supplemental Motion to Enforce Settlement and Motion to Strike Parts of the Bigler Affidavit and References Thereto (Doc. 124).[5] On October 15, 2007, Defendant Mark Smith filed a Motion Joining in Posnet's Motion to Strike Parts of the Bigler Affidavit and Reference Thereto (Doc. 125). On October 22, 2007, Plaintiffs Cunningham and Cunningham Electronics filed Plaintiffs' Opposition To Supplemental Motion To Enforce Settlement and Motion To Strike Parts of the Bigler Affidavit and References Thereto (Doc. 126). Finally, on October 23, 2007, Defendants filed Posnet's and Smith's Reply to Plaintiffs' Opposition to Supplemental Motion ot Enforce Settlement and Motion to Strike Parts of the Bigler Affidavit and References Thereto (Doc. 127). The parties have fully briefed the matter now before the Court.

## CONCLUSIONS OF LAW

In determining whether to enforce a settlement agreement, a court must first determine whether the parties entered into a valid and enforceable agreement. See Carr v. Runyan, 89 F.3d

---

[4] The Court construes this motion as the filing of a petition to delay entry of judgment as contemplated in Judge Gilbert's 60-day order.

[5] As stated, supra, this was filed as a response and not a motion and is therefore not before the Court for a determination.

327, 331 (7th Cir. 1996). The court of appeals will review this Court's decision for an abuse of discretion. Id. A reviewing court will not determine whether it agrees with the lower court's decision, but whether that decision was reasonable. See Antevski v. Volkswagenwerk Aktiengesellschaft, 4 F.3d 537, 539-40, (7th Cir. 1993).

State law governs the analysis of the parties' negotiation and purported agreement. Therefore Illinois contract law is applicable here. See Dillard v. Starcon International, Inc., 483 F.3d 502, 506 (7th Cir. 2007); see also Locasto v. Locasto, No. 07 C 1539, 2007 WL 2936369 (N.D.Ill. Oct. 5, 2007). Under Illinois law, "a contract must be enforced according to its terms or not at all." Sweeting v. Campbell, 132 N.E.2d. 523, 525 (Ill. 1956) ("[a] court has no authority to compel a party to do something different from what he has agreed to do in his contract"). Additionally, where there is no ambiguity in the meaning of the agreement "the intention of the parties must be ascertained from the words employed therein." Touhy v. Twentieth Century-Fox Film, 387 N.E.2d. 862, 865 (Ill. App. Ct. 1979). Moreover, "[d]etermination of whether an agreement is ambiguous is a matter of law." Id., (citation omitted).

The settlement agreement before the Court was reduced to writing and signed by all necessary parties.[6] Its terms are not ambiguous, and the intent of the parties is clear in the document. The parties agreed to dismissal of the lawsuit pending before the Court and agreed to five affirmative acts, only one of which is at issue here. The act in dispute required Priva Technologies to grant software licenses to the Plaintiffs in this case after certain conditions were met. The parties now dispute whether these conditions were carried out as outlined in the

---

[6] William R. Cunningham for himself and on behalf of Cunningham Electronics, Timothy Halfman for Posnet Services, LLC., Mark Heatwolfe for Priva Technologies Inc., Mark Smith for himself and United States Magistrate Judge Donald G. Wilkerson.

contract for settlement. The provision at issue states as follows:

> (7) The Settlement Agreement shall be contingent upon verification by Matra and Arroway (or another third-party acceptable to the parties) that: (a) the Software accepts CPG Manufacturer offer details in a central repository and is sent electronically to the retailer store locations; (b) the Software communicates with the Redemption Engine that triggers discounts to consumers by validating that UPC's associated with promoted products have been purchased (c) the communications described in 7(b) above occur in commercially reasonable time frames; and (d) the Software eliminates the need for CEC to provide an in-store processor at retail store locations to maintain a coupon offer registry.

(Doc. 120, Exh. 1, p. 4, ¶ 7).

On September 27, 2007, Plaintiffs filed a motion to reinstate the case. At that time, prior to any actual testing taking place, Plaintiffs were already hinting that they intended to challenge the settlement agreement.[7] The actual software test was conducted on October 8, 2007, at the offices of Posnet/Priva in Rolling Meadows, Illinois. The demonstration was performed by Stacey Simonds of Priva. Louis J. Kovacs of MATRA Systems Inc. was present at the demonstration. Kovacs has filed an affidavit with the Court stating that as a result of the demonstration he verifies that:

> a. The Software accepts CPG Manufactures offer details in to a central repository and is sent electronically to retailer store locations;
> b. The software communicates with Redemption Engine that triggers discounts to consumers by validating that UPC's associated with promoted products have been purchased.
> c. The communications described in subparagraph (b) above occur in commercially reasonable time frames; and
> d. The Software eliminates the need for CEC to provide an in-store processor at retail store locations to maintain a coupon offer registry.[8]

---

[7] "Furthermore, plaintiffs have serious concerns about whether the facts upon which settlement was reached are true." Motion to Reinstate Case (Doc. 116, ¶ 4).

[8] Although Plaintiffs contest the fact that Kovacs's declaration was not valid under 28 U.S.C. §1746, a subsequent declaration submitted purports with that rule.

(Doc. 123, Declaration of Louis J. Kovacs, ¶ 5).

Plaintiffs submitted the declaration of John Bigler to support their contention that the October 8 test was unsuccessful and that MATRA was unable to verify the functionality of the software.  This declaration however, is not persuasive because the parties agreed that MATRA and a second entity, Arroway, or another third-party acceptable to the parties, would verify the test.  There has been no showing, nor is there any argument, that Mr. Bigler represented Arroway or another entity.  Indeed, Bigler's declaration identifies him as Director of Operations for Cunningham Electronics.  Therefore, Bigler's declaration is irrelevant to construe the terms of the settlement agreement.

Turning to the issue of the presence of Arroway's (or another third-party's) verification of the test, the Court must determine if the Plaintiffs waived their right to have that entity present at the test.  To support its contention that Plaintiffs failed to have a third party present at the test, the Defendants point to Plaintiffs' failure to address this issue in its filings with the Court.  Defendants also present an e-mail from John Bigler to Mark Heatwolfe, in which Bigler states that he confirmed with Bill (Plaintiff William Cunningham) that he did not intend to utilize Arroway during the test.  In the e-mail, Bigler acknowledged the place of testing and expressed some concern about the time frame of the testing (Doc. 123, Exh. e-mail).  Neither that e-mail, nor any other document presented to the Court, indicates that Plaintiffs intended to replace Arroway with a different third-party represenative.  During the settlement conference it was clear that Arroway was to be Plaintiffs' representative.  Plaintiffs cannot now complain that they are dissatisfied with the one representative's report when they waived their opportunity to have their own representative present.  This Court therefore, finds that Plaintiffs waived their opportunity

to have a representative present in addition to MATRA.  The Court also finds that the MATRA representative has certified that the conditions agreed upon by the parties have been met as contemplated by the agreement.

Finally, Plaintiffs contend that they were misled in that they were not told they would need a separate, third-party software license (available at considerable cost) in order to make the software functional.  Plaintiffs argue the contract should be rescinded by the Court or at the very least, Posnet should, pursuant to the terms of the August 7 agreement, provide the license for the third-party software.

"Rescission is the canceling of a contract so as to restore the parties to their initial status." Illinois State Bar Ass'n. Mut. Ins. Co. v. Coregis Ins. Co, 821 N.E. 706, 713 (Ill.App. Ct. 2004).  It is "an equitable doctrine, and a party rescission must restore the other party to the status quo existing at the time the contract was made." Id.  A court sitting in equity may grant the remedy of recision where there has been some fraud in the making of the contract.  Id.

The parties herein are entities and persons involved in the sophisticated computer software business.  This dispute has spanned several years, and the August 7 agreement was reached after protracted negotiations.  The agreement specifically includes a provision that states, "[t]he licenses granted by POSnet/Priva are without representation or warranty of any kind and the Software is to be delivered 'as is'" (Doc. 120, Exh. 1, p. 4, ¶ 6).  The parties signed the agreement indicating their assent to its terms and to this provision.  All parties to this transaction are well acquainted with the computer software industry and moreover, are experienced and knowledgeable business persons.  Plaintiffs cannot seek recision of an enforceable contract merely because of an unexpected or perceived unfavorable outcome when

the contract was achieved through valid, although retrospectively ineffective, negotiation. Defendants are entitled to enforce the bargain. Additionally, as to any requirement that the Defendants pay licensing fees to the third-party vendor, the contract did not address this possibility and this Court declines to find in equity that the cost should be apportioned to Defendants.

This Court finds that the Memorandum of Settlement reached by the parties on August 7, 2007, is a valid and enforceable agreement. The terms of the contract are clear and unambiguous. All conditions specified in the agreement have been met as verified by MATRA, and as such, Defendants are entitled to enforce the agreement.

For the reasons set forth above, it is the **RECOMMENDATION** of this Court that the Plaintiffs' Motion to Reinstate the Case (Doc.116) be **DENIED**, that Defendant Mark Smith's Motion to Enforce the Settlement Agreement (Doc. 120) and Supplemental Motion to Enforce the Settlement Agreement (Doc. 123) by Defendant Mark Smith be construed as one motion and be **GRANTED**, that Defendant Posnet's Motion to Strike Parts of the Bigler Affidavit and References Thereto (Doc. 124) be **DENIED** and that Defendant Mark Smith's Motion Joining in Posnet's Motion to Strike Parts of the Bigler Affidavit and Reference Thereto (Doc. 125) be **DENIED AS MOOT** and that an **ORDER** enforcing the settlement agreement be issued and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. <u>Snyder v. Nolen</u>, 380 F.3d 279, 284 (7th

Cir. 2004); <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 6, 2007**

                                              **s/** *Donald G. Wilkerson*
                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**